IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
November 6, 2019 Session

## PAUL ZACHARY MOSS v. SHELBY COUNTY CIVIL SERVICE MERIT BOARD

**Appeal by Permission from the Court of Appeals
Chancery Court for Shelby County
No. CH-15-1669     JoeDae L. Jenkins, Chancellor**

_____

**No. W2017-01813-SC-R11-CV**

_____

The issue presented is whether the Shelby County Fire Department provided a firefighter with sufficient notice of the reasons for his termination. The Fire Department advised the firefighter that he was facing possible termination for violating two specific Fire Department rules. After further investigation and a meeting with the firefighter, the Fire Department gave him a termination letter that recited the two rules and detailed the factual basis for his termination. The firefighter appealed, and the Shelby County Civil Service Merit Board upheld the termination in a written decision that stated the facts and reasons supporting the termination. The trial court affirmed the Board's decision. The Court of Appeals reversed, finding that the firefighter did not receive adequate notice of the reasons for his termination. We hold that the Shelby County Fire Department provided the firefighter with sufficient notice to satisfy the requirements of due process. We reverse the decision of the Court of Appeals and remand for consideration of pretermitted issues.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals reversed; Case remanded to the Court of Appeals**

SHARON G. LEE, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

Megan J. Smith and E. Lee Whitwell, Memphis, Tennessee, for the appellant, Shelby County Civil Service Merit Board.

Andrew C. Clarke, Memphis, Tennessee, for the appellee, Paul Zachary Moss.

# OPINION

## I.

On November 1, 2013, Paul Zachary Moss, while off duty from his job as a firefighter with the Shelby County Fire Department, went to a political rally at his wife's request. Police arrested Mr. Moss at the rally after he argued and scuffled with Thomas Mason Ezzell, Jr. and Earl N. Mayfield, Jr. A grand jury indicted Mr. Moss on two counts of aggravated assault. On February 24, 2015, the Shelby County Criminal Court accepted Mr. Moss's *Alford* guilty plea[1] to one count of aggravated assault arising out of the altercation involving Mr. Ezzell and dismissed the count involving Mr. Mayfield. The Criminal Court placed Mr. Moss on judicial diversion.[2]

### *Employment Termination*

On March 2, 2015, Fire Department Deputy Chief Dale H. Burress gave Mr. Moss a written *Loudermill*[3] notice informing him of the possibility of major disciplinary action, including termination, because Mr. Moss had violated:

> I:     RR-0164005: General Rules of Conduct; Page 1, Line 5 (E) states: Disciplinary Action, including discharge, may be taken for, but shall not be limited to the following causes: (e) That the employee has been convicted of a felony.

> II.    AD-0807001: Notification of Arrest; Page 1 (last two sentences state): Disciplinary action may be taken against an employee, as a result of evidence presented, that is in violation of Shelby County Policies,

---

[1] In an *Alford* or best interest plea, a defendant enters a guilty plea and concedes that the prosecutor's evidence would likely result in a guilty verdict but the defendant does not admit to committing the criminal act. *North Carolina v. Alford*, 400 U.S. 25, 37 (1970).

[2] If a qualified defendant complies with all of the conditions of diversion, including completing the required probationary period without violating a condition of probation, the trial court will dismiss the diverted charges. The defendant can then request that the charges be expunged from the public record. Tenn. Code Ann. § 40-35-313 (2014).

[3] In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), the United States Supreme Court held that public employees, who may be fired only for cause, have a right to notice and an opportunity to respond to charges against them. Under the Shelby County Civil Service Merit Act of 1971, Mr. Moss was a classified Shelby County employee and could be terminated only for just cause. *See* 1971 Tenn. Priv. Acts, ch. 110.

procedures or regulations. Such disciplinary action may be separate and apart from pending or final court decisions.

The notice advised Mr. Moss that he could meet with Deputy Chief Burress on March 30, 2015, to present, orally or in writing, any reasons why discipline should not be imposed.

On March 30, 2015, Fire Department Chief Alvin D. Benson and Deputy Chief Burress met with Mr. Moss in what is known as a *Loudermill* hearing. They asked Mr. Moss several questions about the November 2013 altercation. Mr. Moss told them that Mr. Ezzell confronted him first, but acknowledged that after Mr. Ezzell began to walk away, Mr. Moss attempted to continue the conversation. Mr. Moss admitted that he pointed his gun at Mr. Ezzell and Mr. Mayfield during the physical struggle that followed, but denied that he had been drinking. Chief Benson and Deputy Chief Burress also asked Mr. Moss about other instances involving alcohol, weapons, or assaults that required police involvement. Mr. Moss admitted that the police had arrested him before for possession of a firearm, but denied that alcohol had been involved. Mr. Moss also denied that he had assaulted a woman. But police records showed that in March 2011, police arrested Mr. Moss on charges of public intoxication and possession of a firearm while under the influence of alcohol. Police records also showed that in October 2012, a police officer responded to a domestic violence call during which Mrs. Moss stated that Mr. Moss had assaulted her.

By letter dated March 31, 2015, Chief Benson notified Mr. Moss that his employment was terminated. The letter began by detailing Mr. Moss's conduct during the November 2013 political rally, his arrest, and his guilty plea. The letter then restated the two charges in the *Loudermill* notice:

I.      RR-0164005: General Rules of Conduct; Page 1, Line 5 (e): Disciplinary action, including discharge, may be taken for, but shall not be limited to the following causes: (e) The employee has been convicted of a felony.

II.      AD-0807001: Notification of Arrest; Page 1 (In part): Disciplinary action may be taken against an employee, as a result of evidence presented, that is in violation of Shelby County Policies, procedures or regulations. Such disciplinary action may be separate and apart from pending or final court decisions.

Next, the letter described Mr. Moss's "vague and in some cases deceptive and/or untrue" responses about the November 2013 altercation during the *Loudermill* hearing, including that:

- Mr. Moss claimed that he only intended to escort his wife from the rally, but Mr. Moss "confronted protesters, engaged in a fight, and attempted to leave" without his wife;

- Mr. Moss denied that he "intended to personally settle the disturbance," but he was confrontational and his actions indicated extremely aggressive behavior and "hot-temperedness";

- Mr. Moss denied he had been drinking alcohol on the day of the altercation but told Deputy Chief Burress otherwise. Also, witnesses testified that Mr. Moss appeared to be "under the influence of alcohol and out of control";

- Mr. Moss denied confronting an upset woman at the rally but admitted in a written statement that he approached the woman to try to calm her;

- Mr. Moss denied showing aggression toward "the man with the [former President Barack] Obama mask" but followed him, lunged at him, and ripped his shirt;

- Mr. Moss admitted to a previous arrest for possession of a gun without a permit but denied the police report account that alcohol was involved; and

- Mr. Moss denied being involved in a previous incident in which police responded to a call about Mr. Moss allegedly assaulting his wife.

Chief Benson expressed his conclusion that Mr. Moss was the primary aggressor in the altercation, had been drinking, had a firearm, and was "emboldened." He described Mr. Moss's conduct as irresponsible, careless, and reckless. In addition, Mr. Moss's conduct jeopardized the lives of "two aging decorated military veterans [and] the lives of everyone at the scene." The letter concluded by stating: "[c]onsidering the elements of this case and the preponderance of the evidence," Chief Benson terminated Mr. Moss's employment for violating the Fire Department's standards of personal conduct and behavior.

*Administrative Review*

Mr. Moss appealed his termination to the Shelby County Civil Service Merit Board. Testifying at the hearing before the Board were Mr. Mayfield, Chief Benson, Deputy Chief Burress, Mr. Moss, and Kenneth W. Brashier.

- 4 -

Mr. Mayfield testified that on November 1, 2013, he and a group of six to eight acquaintances were displaying American flags and an anti-Obama banner from an overpass over I-240 in Memphis during a political rally.[4] Mr. Ezzell wore an "Obama" mask during the rally. After the event, Mr. Moss approached the rally participants in a parking lot, yelling at them, and appeared to be under the influence of alcohol or drugs. Mr. Moss demanded to know who was wearing the mask. According to Mr. Mayfield, Mr. Ezzell identified himself as wearing the mask and listened to Mr. Moss for a short time before telling Mr. Moss that he would not listen anymore. Mr. Mayfield explained that after seeing Mr. Moss pounce on Mr. Ezzell, Mr. Mayfield came up behind Mr. Moss and grabbed his head and neck and pulled him to the ground. According to Mr. Mayfield, Mr. Moss pulled a gun from his pocket, pointed it at Mr. Mayfield's head, and threatened to kill him. When Mr. Mayfield let Mr. Moss go, Mr. Moss walked away toward his vehicle. Police arrested Mr. Moss at the scene. Mr. Mayfield gave a written statement at the police station about the altercation.

Chief Benson testified that he provides general oversight at the Fire Department, including supervision of instruction and administration of resources. Chief Benson, who conducted Mr. Moss's *Loudermill* hearing, concluded that based on a preponderance of the evidence, Mr. Moss was the primary aggressor in the November 2013 altercation. In addition, he found that Mr. Moss threatened to use a firearm and was under the influence of alcohol. Chief Benson explained that, during a *Loudermill* investigation, the Fire Department looks at prior behaviors of an employee to assess credibility. He learned from the investigation that police had charged Mr. Moss in 2011 with public intoxication and possession of a firearm while under the influence of alcohol. He also learned that in 2012, Mr. Moss had been involved in a domestic assault incident. The Fire Department had no record of Mr. Moss reporting either incident to his superiors. Counsel for Mr. Moss objected to consideration by the Board of any facts unrelated to the two charges stated in the *Loudermill* notice, but the Board did not rule on the objection.

Chief Benson explained that firefighters are held to a higher standard than members of the public. The public trusts firefighters to go into their homes, and firefighters cannot afford to jeopardize that trust. Thus, it is a terminable offense for a firefighter to be under the influence of alcohol, to have a weapon, and to "use" the weapon on a citizen.[5] Chief Benson reiterated that he gives weight to an employee's prior

---

[4] These individuals were apparently expressing their opposition to President Barack Obama.

[5] The Fire Department's "General Rules Governing Conduct" provide that the Fire Department may impose discipline, including termination, when an employee "has been offensive in his conduct toward . . . the public." These general rules of conduct also require employees to exhibit courtesy in their interactions with the public and "avoid harsh, violent, profane and insulting language and manners." Failure to comply with this requirement constitutes "gross insubordination."

encounters with the police to assess the credibility of the allegations. He agreed that Mr. Moss's *Alford* guilty plea did not constitute a felony conviction in the legal sense, but for administrative purposes, the plea fell under the administrative charge of a felony conviction. Chief Benson acknowledged that Mr. Moss informed the Fire Department of his November 1, 2013 arrest, but Chief Benson did not learn that Mr. Moss had not reported the 2011 and 2012 incidents until after the issuance of the *Loudermill* notice.

Deputy Chief Burress testified that he did most of the investigation into Mr. Moss's conduct. According to the findings from the *Loudermill* hearing, Mr. Moss had pleaded guilty to a felony charge and been granted diversion. Under Shelby County government rules, a firefighter may not continue his employment after pleading guilty to a felony. Deputy Chief Burress also stated that Mr. Moss's untruthful answers to questions during the *Loudermill* hearing about the 2011 and 2012 incidents factored into the decision to terminate Mr. Moss's employment.[6] The Fire Department had no records showing that Mr. Moss had notified his superiors of the 2011 and 2012 incidents. Deputy Chief Burress acknowledged that Mr. Moss had good evaluations and no previous disciplinary actions other than some issues with attendance. Deputy Chief Burress agreed that the two violations stated in the *Loudermill* notice related to the November 2013 altercation.

Mr. Brashier testified that he represented Mr. Moss in the aggravated assault case arising from the November 2013 altercation. The Fire Department allowed Mr. Brashier to observe, but not participate in, the *Loudermill* hearing. Before the *Loudermill* hearing, Mr. Brashier sent a letter to the Fire Department explaining that there is no conviction when a defendant, like Mr. Moss, enters an *Alford* guilty plea and is granted judicial diversion. He enclosed with the letter a Tennessee Attorney General opinion supporting his position.

Mr. Moss testified that he began working as a firefighter with the Fire Department in October 2007, after about five years with the Memphis Fire Department. Mr. Moss explained that after his 2011 arrest for public intoxication and possession of a firearm, he reported the arrest to his superiors, explaining that he had been arrested after a sleepwalking incident caused by taking prescribed medication. Mr. Moss maintained that no alcohol was involved, that all charges were dismissed, and that the Fire Department brought no disciplinary charges against him. He admitted he had no documentation showing that the meeting with his superiors took place and that he had no permit for the firearm he was carrying. As to the 2012 domestic violence incident, Mr. Moss said he

---

[6] The Fire Department's general rules of conduct state that "[e]mployees shall not misrepresent or falsify any matter verbally or in writing" and that refusal "to give complete and accurate information shall be grounds for disciplinary actions." The rules that the Fire Department asserts Mr. Moss violated apply to on-duty and off-duty conduct.

was not present when the police responded to his wife's call and did not know there was a police report about the call.

Mr. Moss then explained that on November 1, 2013, he was at home when his wife called and asked him to meet her at a political rally because she was feeling threatened. Mr. Moss denied consuming alcohol that day. He stated that when he arrived at the event, he approached a woman on the street who told him she was angry because white men were wearing "black-men" masks. The police arrived moments later, and the woman went to talk to the police. Mr. Moss then spoke with a former coworker, who told him someone had mentioned doing a "drive-by" shooting. Mr. Moss went to a parking lot to speak to the event participants and to ask his wife why she was at the rally with the men wearing "black-men" masks. According to Mr. Moss, Mr. Ezzell then walked over and said he was the person wearing the "Obama" mask. Mr. Moss said he became upset and yelled at Mr. Ezzell because Mr. Moss's wife had been put in a dangerous situation. He admitted saying to Mr. Ezzell, "Are you stupid?" He also acknowledged that he was "trying to be heard," but denied swinging at, grabbing, or punching Mr. Ezzell. Mr. Moss explained that Mr. Mayfield hit him from behind and put him on the ground in a headlock, and Mr. Ezzell tried to grab his arms. When Mr. Moss freed himself, he pulled his gun because he felt he was in imminent danger. The police arrested Mr. Moss and took him to the police station. After his release, Mr. Moss reported his arrest to his battalion chief.

Mr. Moss said that he kept Deputy Chief Burress informed about the case and that Deputy Chief Burress recommended that he take the diversion as "the best way to hold on to [his] job." Mr. Moss agreed that a higher standard applies to firefighters than to the general public. He asserted that he did not make a "conscious choice" to take his gun to the rally. Mr. Moss explained that because he always carries his gun, the gun was in his pocket when his wife called asking him to meet her.

On November 20, 2015, the Board issued its decision upholding Mr. Moss's termination. Under a section of the decision titled "Applicable Policy/Code Provisions," the Board restated the two rules cited in the *Loudermill* notice and in the termination letter sent to Mr. Moss. The Fire Department's position, as summarized by the Board, was that Mr. Moss was fired because, while under the influence of alcohol, he started a fight with two individuals in a crowd of protesters, pointed a gun at their heads, and threatened to kill them. The Board stated that Mr. Moss's position was that the case was about the two charges in the *Loudermill* notice—conviction of a felony and failure to notify the Fire Department of an arrest. Mr. Moss asserted that the facts did not support these charges because his *Alford* guilty plea and diversion did not constitute a felony conviction, and he notified the Fire Department within hours of his arrest. Based on the testimony of witnesses and exhibits entered into the record, the Board found that:

- The Fire Department had met its burden of proof for terminating Mr. Moss for cause;

- Mr. Moss was untruthful during the *Loudermill* hearing and exhibited conduct unbecoming of a Shelby County firefighter or Shelby County employee while off duty; and

- Even though Mr. Moss was granted judicial diversion, his conduct during the November 2013 altercation was "an egregious violation of the General Rules of Conduct" that "reflected adversely on all firefighters."

*Trial Court Review*

Mr. Moss filed a writ of certiorari in the Shelby County Chancery Court seeking judicial review of the Board's decision. Mr. Moss asserted that his termination violated his procedural due process rights because Mr. Moss did not receive adequate notice of the charges against him before his *Loudermill* hearing; Mr. Ezzell did not attend the *Loudermill* hearing even though he was under subpoena; the Board did not allow counsel for Mr. Moss to exceed the scope of direct examination when cross-examining Deputy Chief Burress; and a Board member laughed when Mr. Mayfield asked counsel for Mr. Moss if he was "hearing impaired."[7] Mr. Moss also argued that the Board's decision was unsupported by substantial and material evidence because the evidence presented at the *Loudermill* hearing did not establish the two charges specified in the *Loudermill* notice. He also contended that the Board's decision was arbitrary and capricious because it was based on reasons not stated in the *Loudermill* notice.

The trial court found no merit to Mr. Moss's evidentiary arguments and ruled that taking the pre-termination and post-termination proceedings together, Mr. Moss had adequate opportunity to challenge the reasons for his termination and thus the requirements of due process were satisfied. The trial court noted that Mr. Moss had received a letter after the *Loudermill* hearing "that set out in detail the basis for his termination, which included the November 1, 2013 incident, and his untruthful answers during the hearing itself." Last, the trial court found that substantial and material evidence supported the Board's decision, including the testimony of multiple witnesses who confirmed Mr. Moss had violated applicable policies. Thus, the trial court affirmed the Board's decision.

---

[7] During Mr. Mayfield's cross-examination, counsel for Mr. Moss asked repeatedly whether he had seen Mr. Moss speaking with his wife. After Mr. Mayfield had responded several times that he had not seen them talking, Mr. Mayfield asked Mr. Moss's counsel if he was "hearing impaired." Counsel for Mr. Moss then asked that the record reflect that one of the Board members "laughed when a witness used derogatory terms towards an attorney."

*Court of Appeals Review*

Mr. Moss appealed to the Court of Appeals, contending that the Fire Department violated his due process rights by failing to give him adequate notice of the charges against him and that the Board made many incorrect evidentiary rulings. He also argued that the Board's decision was arbitrary and unsupported by substantial and material evidence.

The Court of Appeals held that Mr. Moss's due process rights were violated based on an inadequate notice of the charges against him. *Moss v. Shelby Cnty. Civ. Serv. Merit Bd.*, No. W2017-01813-COA-R3-CV, 2018 WL 4913829, at *5 (Tenn. Ct. App. Oct. 10, 2018), *perm. app. granted* (Tenn. Feb. 25, 2019). The Court of Appeals rejected the Board's contention that Mr. Moss received notice of charges not stated in the *Loudermill* notice—his conduct during the November 2013 altercation and untruthfulness during the *Loudermill* hearing—through the termination letter. The Court of Appeals acknowledged that the Fire Department detailed Mr. Moss's conduct in the termination letter and in the Board's decision but emphasized that those documents did not "specifically reference an applicable charge" other than the two charges in the *Loudermill* notice. To the extent that the Board upheld Mr. Moss's termination on grounds other than those two charges, the Court of Appeals held that Mr. Moss's due process rights were violated. Pretermitting all other issues, the Court of Appeals reversed and remanded to the trial court with instructions to order the Board to reinstate Mr. Moss to his position with the Fire Department with benefits and back pay. *Id.*

We granted the Board's application for permission to appeal.

**II.**

*Standard of Review*

We review a civil service board decision upholding the termination of a civil service employee under the standards for judicial review set forth in the Tennessee Uniform Administrative Procedures Act, Tennessee Code Annotated section 4-5-322. *See Davis v. Shelby Cnty. Sheriff's Dep't*, 278 S.W.3d 256, 263 (Tenn. 2009) (citing Tenn. Code Ann. § 27-9-114(b)(1)). Under section 4-5-322, a reviewing court

> may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5) (A) Unsupported by evidence that is both substantial and material in the light of the entire record.

(B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h) (2011). The reviewing court may reverse, remand, or modify a civil service board decision only for errors that affect the merits of the decision. *Id.* § 4-5-322(i).

*Procedural Due Process – Notice*

Under the Fourteenth Amendment to the United States Constitution, no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This Court has held that Article I, section 8, of the Tennessee Constitution provides similar protections. *Lynch v. City of Jellico*, 205 S.W.3d 384, 391 (Tenn. 2006) (citing *Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 711 n.4 (Tenn. 2003)) (recognizing that Article I, section 8 of the Tennessee Constitution "is synonymous with the due process provisions of the federal constitution"). The parties do not dispute that Mr. Moss had a property interest in continued employment with the Fire Department and was entitled to due process. *See Loudermill*, 470 U.S. at 538.

The most fundamental element of due process is "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[N]otice and opportunity for [a] hearing appropriate to the nature of the case" must precede the "deprivation of life, liberty or property." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties" of the claims against them. *Id.* at 314 (citations omitted). Due process requires notice to give affected individuals an

opportunity for adequate preparation before an impending hearing. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978).

Under the standard set by *Loudermill*, this Court reviews pre-termination and post-termination procedures "in tandem" to determine whether the public employer satisfied the requirements of due process. *See Bailey v. Blount Cnty. Bd. of Educ.*, 303 S.W.3d 216, 231–32 (Tenn. 2010) (citing *Carter v. W. Reserve Psychiatric Habilitation Ctr.*, 767 F.2d 270, 273 (6th Cir. 1985); *Case v. Shelby Cnty. Civil Serv. Merit Bd.*, 98 S.W.3d 167, 173 (Tenn. Ct. App. 2002)). "Elaborate procedures at one stage may compensate for deficiencies at other stages." *Phillips v. State Bd. of Regents of State Univ. & Cmty. Coll. Sys. of Tenn.*, 863 S.W.2d 45, 50 (Tenn. 1993) (citing *Bignall v. N. Idaho Coll.*, 538 F.2d 243, 246 (9th Cir. 1976)). The question before us is whether Mr. Moss received adequate notice from the pre-termination and post-termination procedures of the grounds on which the Board upheld the Fire Department's decision to terminate his employment.

The Board argues that the March 31, 2015 termination letter from Chief Benson gave Mr. Moss adequate notice of the grounds for this termination. The Board asserts that questions asked by Chief Benson and Deputy Chief Burress at the *Loudermill* hearing put Mr. Moss on notice that the Fire Department was considering his conduct during the November 2013 altercation as a ground for disciplinary action. Mr. Moss responds that he was not given proper notice of the charges on which the Board upheld his termination—his conduct during the November 2013 altercation and alleged dishonesty during the *Loudermill* hearing. He stresses that both the *Loudermill* notice and the termination letter identified only the violation of two rules specifically dealing with being convicted of a felony and failing to report an arrest.

Two documents in the record assist in our determination about whether Mr. Moss received adequate notice of the reasons for his termination before the October 20, 2015 hearing before the Board. The March 2, 2015 *Loudermill* notice from Deputy Chief Burress, which Mr. Moss received less than a week after his *Alford* guilty plea to aggravated assault, advised him that the Fire Department was considering major disciplinary action against him based on violation of two rules addressing a felony conviction and the failure to notify the Fire Department of an arrest. The March 31, 2015 termination letter from Chief Benson listed these two rules and a detailed account of the events surrounding the November 2013 altercation that led to Mr. Moss's indictment for aggravated assault and the *Alford* guilty plea. The letter asserted that Mr. Moss was "deceptive and/or untrue" during the *Loudermill* hearing in responding to questions about the November 2013 altercation and previous instances "involving alcohol, weapons and/or assaults." The letter then described specific examples of dishonest responses given by Mr. Moss. Chief Benson included in the letter his conclusions that Mr. Moss's

"behavior was irresponsible, careless and reckless," that he had "brought dishonor" to the Fire Department, and that he was being terminated "for violating the standards of personal conduct and behavior" of Fire Department employees.

Mr. Moss places undue emphasis on the contents of the *Loudermill* notice. In determining whether Mr. Moss received proper notice of the reasons for his dismissal, we must consider both the pre- and post-termination procedures afforded to him. *See Phillips*, 863 S.W.2d at 50 (stating that "the component parts of the process are designed to reach a substantively correct result"). Here, the pre-termination *Loudermill* notice stated that Mr. Moss had violated only the two rules dealing with a felony conviction and notification of arrest. However, at the *Loudermill* hearing, Chief Benson and Deputy Chief Burress did not limit their questions to facts about the alleged violation of these two rules. Both men questioned Mr. Moss specifically about his conduct before, during, and after the altercation at the rally. They also asked him about prior incidents involving alcohol, weapons, or assaults. Chief Benson's termination letter, issued the next day, emphasized Mr. Moss's behavior during the November 2013 altercation and his dishonest responses during the *Loudermill* hearing as "elements" he considered in terminating Mr. Moss's employment. The letter not only identified these grounds, but also elaborated on them by describing specific examples of objectionable conduct. These examples stated the factual basis for Chief Benson's conclusion that Mr. Moss had violated the standards of personal conduct for Fire Department employees. Mr. Moss received this letter explaining the reasons for his termination nearly seven months before the November 1, 2013 hearing before the Board.

Mr. Moss's tactical decisions before and during the hearing before the Board show that he intended to challenge Chief Benson's conclusions about his conduct during the November 2013 altercation. Mr. Moss subpoenaed Mr. Ezzell and Mr. Mayfield, the other men involved in the altercation, to testify at the hearing. Mr. Ezzell and Mr. Mayfield could offer little or no evidence about whether Mr. Moss had been convicted of a felony or had notified the Fire Department of his arrest. Instead, these subpoenaed witnesses had firsthand knowledge about the political rally and the altercation. At the hearing, counsel for Mr. Moss questioned Mr. Mayfield about these facts. When Mr. Ezell did not appear at the hearing, Mr. Moss's counsel objected, stating: "[W]e are *charged with a witness who has accused Mr. Moss of doing certain things*, and filed criminal charges and did certain things, and that witness hasn't appeared." (Emphasis added). In addition, Mr. Moss's counsel asked Chief Benson and Deputy Chief Burress about their knowledge of Mr. Moss's conduct during the altercation.

Mr. Moss also came to the hearing prepared to dispute his alleged dishonesty with respect to past incidents involving alcohol, weapons, or assaults. Mr. Moss testified at length about his 2011 arrest on charges of public intoxication and possession of a firearm

while under the influence of alcohol, offering the Board an alternative explanation to what the police report reflected. As for the 2012 domestic violence incident, Mr. Moss told the Board that he was not present when the police showed up and was unaware the police had taken a report. Also, Mr. Moss's counsel questioned Chief Benson about his knowledge of the 2011 and 2012 incidents, emphasizing that Chief Benson was not with the Fire Department at the time.

Based on the pre-termination *Loudermill* notice, the questions during the *Loudermill* hearing, and the contents of the termination letter, we conclude that Mr. Moss had sufficient notice that his conduct during the November 2013 altercation and his answers about the 2011 and 2012 incidents were reasons for his termination. Mr. Moss received adequate notice of the factual allegations against him and had an opportunity to prepare for his hearing before the Board. His contention that the Fire Department violated his due process rights lacks merit.

In holding that Mr. Moss did not receive sufficient notice of the charges against him, the Court of Appeals found that the termination letter did "not specifically reference an applicable charge other than those highlighted in the *Loudermill* notice." *Moss*, 2018 WL 4913829, at *5. The Court of Appeals reasoned that because the Board upheld Mr. Moss's termination on "grounds other than the charges specifically identified," the Fire Department violated Mr. Moss's due process rights. *Id.* We respectfully disagree. We cannot consider the *Loudermill* notice in isolation, but must also consider the pre-termination and post-termination information provided to Mr. Moss. The termination letter fully explained the reasons for Mr. Moss's termination and gave him more notice than a mere recitation of technical charges could have afforded him. The termination letter first asserted that Mr. Moss's "irresponsible, careless and reckless" behavior during the November 2013 altercation and his dishonesty during the *Loudermill* hearing violated the Fire Department's standards of personal conduct. The assertions were then supported with multiple specific examples, providing Mr. Moss with notice of the specific factual allegations that Chief Benson considered in deciding to terminate his employment "for violating the standards of personal conduct and behavior of Shelby County Fire Department employees." In addition, the actions of Mr. Moss and his counsel at the hearing before the Board conflict with the claim that Mr. Moss did not know about the allegations against him. Thus, the Court of Appeals' conclusion that due process notice requirements may be satisfied only when pre-termination notices enumerate all applicable charges that may serve as grounds for an employee's termination elevates form over substance.

*Remaining Issues*

Mr. Moss also asserts that he was denied due process because he did not have a chance to confront Mr. Ezzell, who did not appear at the hearing; the Board improperly limited the scope of his cross-examination of Mr. Mayfield; and the Board denied him the chance to present evidence of disparate discipline. He also asserts that the Board's decision was arbitrary and capricious and not based on substantial and material evidence.

Mr. Moss raised these issues below, but the Court of Appeals did not rule on them. In light of our ruling, we remand this case to the Court of Appeals for consideration of the issues pretermitted by its decision.

## III.

We reverse the judgment of the Court of Appeals and remand this case to the Court of Appeals for consideration of pretermitted issues. Costs of this appeal are taxed to Paul Zachary Moss, for which execution may issue if necessary.

_____
SHARON G. LEE, JUSTICE